UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

Gareth D. Wood, *in his own behalf and
on behalf of all others similarly situated*,

                                    Plaintiff,

        -v.-                                    5:09-CV-1445
                                               (NPM/DEP)

Capital One Services, LLC; and NCO
Financial Systems, Inc.,

                                    Defendants.

| APPEARANCES: | OF COUNSEL: |
|---|---|
| LEMBERG & ASSOCIATES L.L.C. | SERGEI LEMBERG, ESQ. |
| Attorneys for Plaintiff | |
| 1100 Summer Street | |
| Floor 3 | |
| Stamford, CT 06905 | |
| | |
| LAW OFFICE OF WILLIAM | WILLIAM C. RAND, ESQ. |
|   COUDERT RAND | |
| Attorneys for Plaintiff | |
| 228 East 45th Street – 17th Floor | |
| New York, NY 10017 | |
| | |
| HUNTON & WILLIAMS LLP | BRIAN V. OTERO, ESQ. |
| Attorneys for Defendant, | |
|  Capital One Services, LLC | |
| 200 Park Avenue, 52nd Floor | |
| New York, NY 10166 | |
| | |
| Riverfront Plaza, East Tower | GEORGE P. SIBLEY, ESQ. |
| 951 East Byrd Street | LEWIS F. POWELL, III, ESQ. |
| Richmond, VA 23219-4074 | |

SESSIONS, FISHMAN, NATHAN &
 ISRAEL, L.L.C.                          DAVID ISRAEL, ESQ.
Attorneys for Defendant,                 BRYAN C. SHARTLE, ESQ.
 NCO Financial Systems, Inc.             MICHAEL D. ALLTMONT, ESQ.
3850 North Causeway Boulevard
Suite 200
Metairie, LA 70002-7227


130 John Muir Drive                      MICHAEL DEL VALLE, ESQ.
Suite 106
Amherst, NY 14228


Neal P. McCurn, Senior District Judge


### *MEMORANDUM-DECISION and ORDER*

### *I.   Introduction*

Presently before the court in this Fair Debt Collection Practices Act case are motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure by defendant Capital One Services, LLC ("COS"), and by defendant, NCO Financial Systems, Inc. ("NCO").  Plaintiff, Gareth D. Wood ("Wood"), opposes each defendant's motion and seeks summary judgment against NCO by cross motion.[1]  Each defendant replies.  Also pending is Wood's motion for class certification, which is also fully briefed.  Decision regarding the pending motions

---

[1]      NCO incorrectly argues that Wood's cross-motion for summary judgment is untimely because it was filed after the deadline for dispositive motions.  Pursuant to Rule 7.1(c) of this court's Local Rules, "[a] party may file and serve a cross-motion . . . at the time it files and serves its opposition papers to the original motion."  N.D.N.Y. R. 7.1(c).  To be sure, electronic filing of all of Wood's papers in opposition to the pending motions for summary judgment and in support of his cross- motion against NCO was not completed until just before 1:00 a.m. eastern time on August 18, 2012, which is about one hour past the deadline.  Because of the extremely short delay, which was most likely due to the electronic processing of Wood's papers, the court considers them to be timely.

is based solely on the submitted papers, without oral argument.

## II.  Procedural Background

Wood originally commenced this putative class action against Capital One Bank (USA), N.A. ("Capital One"), COS and NCO alleging violations of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 et seq., ("FDCPA") and New York General Business Law § 349 ("GBL § 349").[2]  A motion to dismiss the complaint by the Capital One defendants was granted as against Capital One, but denied as against COS.  NCO did not file a motion to dismiss.

Thereafter, the parties engaged in extensive discovery, during which time the magistrate judge assigned to this case was called upon repeatedly to resolve disputes among them.  During the discovery period, Wood filed a motion to certify class, which has been fully briefed and is still pending.  While an appeal of one of the magistrate judge's discovery orders was pending, each defendant filed a motion for summary judgment.  When deciding the appeal, the court denied the motions for summary judgment without prejudice to renew at the close of discovery, with permission of the magistrate judge.  Having received such permission, the pending motions for summary judgment were filed and have now been fully briefed.

## III.  Standard of Review

A motion for summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The movant has the initial burden to show the court why it is entitled to summary judgment.  See Salahuddin v. Goord, 467 F.3d 263, 272 (2d Cir. 2006) (citing Celotex Corp. v. Catrett, 477

---

[2]     Wood additionally alleged a common law fraud claim in the complaint, but he later withdrew the claim.

U.S. 317, 323, 106 S. Ct. 2548 (1986)).  If the movant meets its burden, the burden shifts to the non-movant to identify evidence in the record that creates a genuine issue of material fact.  See id., at 273 (citing Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348 (1986)).

When the court is deciding a motion for summary judgment, it must resolve all ambiguities and draw all reasonable inferences in the non-movant's favor.  See Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004) (citing Adickes v. S. H. Kress & Co., 398 U.S. 144, 157, 90 S. Ct. 1598 (1970)).  Where, as here, a court is considering multiple motions for summary judgment, each party's motion must be evaluated "on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration."  Byrne v. Rutledge, 623 F.3d 46, 53 (2d Cir. 2010) (quotation and citation omitted).

## IV.  Factual Background

The following facts are not in dispute, unless otherwise noted.

In December 2007, Wood opened a credit card account ("the Account") with Capital One.  Under an existing arrangement with Capital One, COS provided all account-related functions necessary to service the Account from the moment it was opened to the present.  These functions include transmitting monthly account statements, sending other account-related correspondence to Wood, responding to telephonic inquiries from Wood, and deciding whether to assign collection responsibilities to a third-party debt collector, such as NCO. COS performs these functions for all Capital One credit card accounts.

Wood used the Account for the purchase of goods and services.  Under the terms of his cardholder agreement with COS, Wood was obligated to pay back COS through minimum monthly payments.  He failed to meet his obligation and

4

became delinquent in his payments to COS in June 2009.  Between June and September 2009, COS sent Wood at least two letters notifying him of his delinquent status and requesting payment.  By October 6, 2009, Wood's account was 120 days delinquent.  His balance was $1,731.35.

When an account becomes seriously delinquent, as was the case with Wood's account, COS may assign collection responsibility for the account to a third-party debt collector.  During the period when collection responsibility is assigned to the debt collector, COS is still performing functions in connection with the account.  COS will continue to send statements and other correspondence to the account holder, it will monitor payment status on the account, and it will periodically assess whether collection responsibility should be returned to COS or transferred to another third-party debt collector.

During any period when collection responsibility for an account has been transferred to a third-party debt collector, COS ceases all telephonic contact with the account holder.  COS will not itself call to attempt to collect the amount due, and if the account holder calls any COS telephone number – i.e., the telephone number on an account statement, the telephone number on the back of the credit card, or the telephone number on a collection letter – COS will transfer the call to the third-party debt collector with collection responsibility for the account.  If a cardholder whose account is delinquent and has been assigned to a third-party debt collector calls a COS customer service number, COS's systems will answer the phone, and an automated message will state, "Welcome to Capital One.  Please say or enter your 16-digit account number."  After the cardholder has entered the account number, COS's computer system will recognize that collection responsibility for the account has been transferred to a third-party debt collector, and the call will be automatically transferred to that third-party debt collector.  It is

expected that the customer service representative for the third-party debt collector who answers the call will identify the name of the agency, make other disclosures required by the State and federal law, and then attempt to reach an agreement on a payment plan with the cardholder.

COS expects that, immediately upon being assigned collection responsibility for a COS account, a third-party debt collector will send the cardholder a written notice that identifies itself as a debt collector and contains the disclosures otherwise required by Section 809(a) of the FDCPA. It is undisputed that NCO sent such a letter here.

In September 2009, Capital One began sending "Pre-Legal Notices," identical to one sent to Wood, to cardholders whose accounts were more than 120 days delinquent and whose outstanding balance exceeded COS's threshold for legal action if the account charged off. COS serviced each of these accounts in accordance with its standard practice, but for some of these accounts, COS assigned collection responsibility to one of the several third-party debt collectors, including NCO, that COS uses.

On October 8, 2009, COS generated the Pre-Legal Notice ("the Notice") it would send to Wood. The Notice is titled, "PRE-LEGAL NOTICE" and appears on Capital One letterhead, which includes the trademarked logo of the Capital One companies. Capital One is identified as the creditor. The Notice includes the balance and minimum payment due, Wood's account number, and that the account is "Serviced by: CAPITAL ONE." Ex. 1 to Decl. of Lewis F. Powell III, Jul. 12, 2012, Dkt. No. 105-2. The text of the letter reads as follows:

> Dear Gareth D. Wood:
>
> Your account is seriously delinquent and meets the guidelines for legal action if payment is not made toward

the amount shown above.

Lawsuits can have serious consequences.  If a judg[]ment is obtained against you, whatever legal actions are deemed advisable to enforce it will be taken.* Judg[]ments are a matter of pubic record, so landlords, lenders and potential employers can see judg[]ments against you.  This could make it more difficult for you to rent an apartment, borrow money or even get a job in the future.

No decision has been made to sue you yet, so you still have options:

>   You can pay $259.00 by your statement due date to bring your account current.
>   Or, you can call to learn about possible flexible payment options and special offers.

To see what your options are or to make a payments, call 1-800-955-6500 or visit www.capitalone.com/solutions.

Sincerely,
Capital One Services, LLC

* Prior to any judgment, you will be notified and able to raise defenses.  Our remedies will be subject to applicable property exemptions.

NOTICE: SEE REVERSE SIDE FOR IMPORTANT INFORMATION

Id.  The reverse of the Notice includes a litany of disclosures, one of which identifies COS as "the servicer" of the Account.  NCO is not named or mentioned in the Notice.  See id.

Both defendants admit that COS's third-party debt collectors, including NCO, received a copy of the template for the Notice before its use.  Beyond that, the parties dispute whether, and to what extent, NCO was involved in the

7

development of the Notice.  Wood contends that the Notice was sent on behalf of
NCO, that NCO directed COS to proceed with its use, and that the Notice was not
able to be used until COS received approval from its third-party debt collectors,
including NCO.  In support of his contentions, Wood cites various email messages
between persons who are purportedly employees of COS and NCO, which were
produced by COS and NCO during discovery.[3]  One message is from a COS
employee, Belinda Nichols, addressed to several people, one of whom is Wally
Funk, NCO's Vice President of Operations, which states that "Capital One is
planning to mail Legal letters on behalf of our 3rd party suppliers . . . .  The letter
has been slightly modified and I need you to review and approve (sic)."  Ex. B to
Decl. of Sergei Lemberg, Aug. 17, 2012, at NCO 0281, Dkt. Nos. 110, 111
("Lemberg Decl.").  A few days later, Ms. Nichols sent a message to Bill Decker,
NCO Vice President for Caribbean Operations, responding to a question he
purportedly posed as to whether the telephone number debtors are directed to call

---

[3]      Both defendants argue that the email messages are inadmissible hearsay, with
NCO adding that none of the persons authoring the messages have authority to bind either
COS or NCO.  Nonetheless, Rule 801(d) of the Federal Rules of Evidence provides that a
statement is not hearsay if it is offered against an opposing party and it is "made by the
party's agent or employee on a matter within the scope of that relationship and while it
existed."  See FED. R. EVID. 801(d)(2)(D).  It appears from the email addresses listed on
the messages submitted by Wood that the declarants are, in fact, employees of either COS
or NCO, and therefore the messages are not hearsay.  While Wood has failed to establish
this fact in order to authenticate the messages, he need not do so to successfully oppose
the defendants' summary judgment motions.  There is no need to comply with the formal
requirement that evidence be authenticated where it is clear that documents submitted by
a non-moving party could be produced in admissible form at trial.  See Rosenthal v.
Nierenberg, No. 09-Civ.-8237, 2010 WL 3290994, at *2, n.2 (S.D.N.Y. Aug. 10, 2010)
(citing Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S. Ct. 2548 (1986) (nonmoving
party need not "produce evidence in a form that would be admissible at trial in order to
avoid summary judgment")).  Wood will not prevail on his cross motions for summary
judgment, however, to the extent his success depends on the admissibility of the cited
email messages.

is NCO's number or COS's number.  Ms. Nichols replied, "The debtor are (sic) directed to call NCO and we provide your number in the letter."  Id., at COS 0287. Four days letter, in a message directed to two COS employees, Mr. Decker states, "NCO is fine with the legal letters (sic) please proceed."  Id., at NCO 01450.

Ramon Valdepenas, "a COS business director primarily responsible for managing an analyst team that reviews the effectiveness and profitability of debt collection strategies,"[4] testified that COS developed the Notice, as well as the template for the Notice, that NCO was not involved in the development of the template for the Notice and that neither NCO, nor any other of COS's third-party debt collectors, requested that COS send the Notice on its behalf.  See Dep. of Ramon Miguel Tinio Valdepenas, Feb. 18, 2001 ("Valdepenas Dep."), 27-29, at Ex. C to Aff. of Bryan C. Shartle, Jul. 11, 2012 ("Shartle Aff."), Dkt. No. 104-2. Mr. Valdepenas further clarified by affidavit that COS employees developed the template for the Notice and that no third-party debt collector asked COS to develop the Notice on its behalf.  Mr. Valdepenas also explained that "[t]he template for the [] Notice was the same whether collection responsibility for the account in question remained with [COS] or was assigned to a third-party debt collector."  Aff. of Ramon Valdepenas, May 20, 2011, ¶ 5, Dkt. No. 105-7.

Mr. Valdepenas's explained that COS sent a sample of the Notice to its third-party debt collectors "to inform them that such a letter would be sent and deployed in the market to its customers."  Valdepenas Dep., 30:1-7, Dkt. No. 104-2.  He testified that "it was prudent for [COS] to inform the [third-party debt collectors] that a letter would be sent . . . [a]nd also to show the content of that

---

[4]    See NCO Mem. of Law in Support of Mot. for Summ. J. at 6, Dkt. No. 104-3 (citing Dep. of Ramon Miguel Tinio Valdepenas, Feb. 18, 2001, 5:7-25, at Ex. C to Aff. of Bryan C. Shartle, Jul. 11, 2012, Dkt. No. 104-2).

letter because it would be our expectation that there would be additional call volume driven by the letters . . . and that the [third-party debt collector's] call center representatives would receive questions regarding the content of the letters." Id., 30:11-17.

For NCO's part, its Vice President of Operations, Mr. Funk, states by affidavit that NCO did not develop, draft, or write [the Notice], or any template of [the Notice] that Wood received nor did it ask COS to do so on its behalf.  See Aff. of Wallace Funk, Jul. 10, 2012, ¶¶ 4-5, Dkt. No. 104-2.  Mr. Funk further states that NCO did not ask COS to send [the Notice], or any template of [the Notice], to Wood.  See id., ¶ 6.

The Notice was not collected by the postal service until October 12, 2009.

On October 10, 2009, after the Account was placed with NCO, NCO sent Wood the initial notice required by the FDCPA ("NCO Letter"), which alerted Wood to NCO's involvement with the Account, and advised Wood of certain rights under the law.  Wood received the NCO Letter before he received the Notice, which was delivered to Wood on October 15, 2009.

Wood depended upon his wife to pay the bills, including the Account. When Wood received a bill from COS every month, he would open it and read it, and then give it to his wife to make arrangements to pay the bill.  After receiving several letters regarding the Account being overdue, Wood received the Notice. Neither Wood nor his wife ever called the toll-free number listed in the Notice. The first call on behalf of Wood to the number was made by his attorney on November 6, 2009.  On November 4, 2009, Wood received a call from NCO regarding the Account.  During this call, Wood made a $35 payment over the telephone on the Account.  On December 29, 2009, Wood commenced this lawsuit.

According to the defendants, the Account was transferred from COS to NCO on October 9, 2009.  Wood argues that it is disputed whether the Account was transferred October 8, 2009 or October 9, 2009.  The only evidence Wood cites to identify this dispute is the deposition testimony of Mr. Valdepenas that October 8, 2009 more accurately reflects the date that the Notice was printed than the date that it was mailed and that the process by which accounts such as Wood's are transferred from COS to NCO includes several steps,

> beginning with the account cycling, its statement cycle date.  And after two days the account is scored and evaluated for placement with a debt collection supplier.  Part of the process also includes the creation of correspondence or a print vendor file to generate associated letters with the account.  And also the generation of a file to the supplier that contains a list of accounts that have been placed or will be placed with the supplier.
>     The file is sent to the supplier.  And the supplier acknowledges receipt of the file and processing thereof.

Valdepenas Dep., 35:5-19, at Ex. C to Lemberg Decl., Dkt. Nos. 110, 111.

In support of their contention that the Account was transferred from COS to NCO on October 9, 2009, the defendants cite Mr. Valdepenas's testimony that the Notice identifies COS at the servicer on the Account because the Account was not transferred to NCO from COS until October 9, 2009, see Valdepenas Dep., 24:17-25:3; 126:13-24; 151:10-16, at Ex. C to Aff. of Bryan C. Shartle, Jul. 11, 2012, Dkt. No. 104-2; and that NCO's placement history reflects that it received the account at 5:00 a.m. on October 9, 2009, see Ex. 11 to Valdepenas Dep., at Ex. 3 to Powell Decl., Dkt. No. 105-5.

COS contends that at the time the Notice was sent, the Account met its guidelines for legal action, which Wood disputes.  Both parties cite Mr. Valdepenas's deposition testimony for support.  According to Mr. Valdepenas,

11

COS will decide to place an account with an attorney for evaluation as to whether or not to file suit against a customer after the account has "charged off," which is when it is 180 days past due.  See Valdepenas Dep., 120:5-14.  However, the account is not placed with an attorney immediately after it is 180 days past due: there is a period, which lasts approximately four months, during which the account it placed for debt recovery, either with COS or with a third-party debt collector.  See id., 121:3-24.  At the conclusion of the four-month period, the account will be placed with an attorney for evaluation of whether or not to file suit against the customer.  See id., 121:25-122:5.  Therefore, approximately six months could pass from the time the Notice is sent until the commencement of suit by COS.  See id., at 124:1-7.

## *V.  Discussion*

In his complaint, Wood asserts eight separate counts of FDCPA violations as well as one count of a violation of GBL § 359 against both defendants alleging deceptive practices related to the use of the Notice in the attempt to collect Wood's debt.  COS seeks summary judgment against Wood on all counts of his complaint, arguing that it is not a debt collector within the meaning of the FDCPA and that the Notice was truthful and did not cause Wood injury.  Wood opposes, arguing that issues of fact prevent summary judgment on his claims against COS.

NCO seeks summary judgment against Wood on all counts of his complaint, arguing that the Notice is not a communication from NCO and that, notwithstanding same, the Notice was not deceptive and did not cause Wood injury.  Wood opposes and seeks summary judgment in his favor on certain counts of his complaint and argues that questions of fact preclude summary judgment against him as to the remaining claims.

### *A.  FDCPA*

12

In enacting the FDCPA, Congress sought to eliminate "abusive practices in the debt collection industry, and to ensure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged." Ellis v. Solomon and Solomon, P.C., 591 F.3d 130, 134 (2d Cir. 2010) (citing Jacobson v. Healthcare Financial Services, Inc., 516 F.3d 85, 89 (2d Cir. 2008); 15 U.S.C. § 1692(e)) (internal quotations omitted).  Consequently, the FDCPA "establishes certain rights for consumers whose debts are placed in the hands of professional debt collectors for collection."  Easterling v. Collecto, Inc., — F.3d —, 2012 WL 3734389, at *3 (2d Cir. 2012) (citing DeSantis v. Computer Credit, Inc., 269 F.3d 159, 161 (2d Cir.2001)).  The FDCPA's legislative purposes inform its many provisions, including prohibition of the use of "any false, deceptive, or misleading representation or means in connection with the collection of any debt," 15 U.S.C. § 1692e, while proscribing "unfair or unconscionable means to collect or attempt to collect any debt," § 1692f.  See Jacobson, 516 F.3d at 89.  The FDCPA also requires the debt collector, as the party in the better position to know the law, to inform the consumer of her right to require verification of the debt.  See § 1692g(a).

Each of these provisions proscribes the conduct of debt collectors solely. See Rogers v. Capital One Services, LLC, No. 10-CV-398, 2011 WL 873312, at *3 (D. Conn. 2011).  Thus, each of Wood's FDCPA claims here apply only to debt collectors.

Whether a collection letter, such as the Notice here, is "false, deceptive, or misleading" under the FDCPA is determined from the perspective of the objective "least sophisticated consumer."  Easterling, — F.3d at —, 2012 WL 3734389, at *3 (quoting Clomon v. Jackson, 988 F.2d 1314, 1318 (2d Cir.1993) (internal quotation marks omitted)).

13

> Under this standard, collection notices can be deceptive if they are open to more than one reasonable interpretation, at least one of which is inaccurate.  However, in crafting a norm that protects the naive and the credulous the courts have carefully preserved the concept of reasonableness.  Accordingly, FDCPA protection does not extend to every bizarre or idiosyncratic interpretation of a collection notice and courts should apply the standard in a manner that protects debt collectors against liability for unreasonable misinterpretations of collection notices.

Id. (internal quotation marks and citation omitted).  Finally, it is important to note that "[d]ebt collectors that violate the FDCPA are strictly liable, meaning that 'a consumer need not show intentional conduct by the debt collector to be entitled to damages.'" Easterling, — F.3d at —, 2012 WL 3734389, at *3 (quoting Russell v. Equifax A.R.S., 74 F.3d 30, 33 (2d Cir. 1996)).

### 1.  FDCPA Claims Against COS

In support of its motion for summary judgment on Wood's FDCPA claims against it, COS argues that it is not a debt collector, and therefore the FDCPA does not apply to it.  The court agrees, and consequently grants COS's motion for summary judgment in this regard.

The FDCPA defines "debt collectors" as persons who use "any instrumentality of interstate commerce or the mails" to engage in debt collection as a principal business, or "who regularly collect[] . . . debts owed or due . . . another." 15 U.S.C. § 1692(a)(6).  However, the FDCPA includes a number of exceptions to this definition.  See Costigan v. CitiMortgage, Inc., No. 10-cv-8776, 2011 WL 3370397, at *5 (S.D.N.Y. Aug. 2, 2011).  Here, COS contends that it falls under the protection of two of those exceptions.  First, excluded from the definition of a debt collector under the FDCPA is "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another

14

to the extent such activity ... (iii) concerns a debt which was not in default at the time it was obtained by such person." Id. (quoting § 1692a(6)(F)).  Second, any entity acting as a debt collector for another entity related by common ownership or corporate affiliation, so long as the party acting as a debt collector does so only for its affiliates and if its principal business is not collecting such debts, is also excepted from the definition of "debt collector."  See § 1692(a)(6)(B); Daros v. Chase Manhattan Bank, 19 F. App'x 26, 27–28 (2d Cir. 2001).

COS argues that because it serviced the Account from its inception, it is not a "debt collector" under 15 U.S.C. §1692a(6)(F)(iii).  Wood counters that COS can not take advantage of this provision because it applies only to mortgage service companies and because COS did not obtain Wood's Account before he defaulted.

The court need now dwell on Wood's second argument for long.  Briefly, Wood diputes the meaning of the word, "obtained," arguing that because COS had the Account from the very moment it opened, COS could not have "obtained" it, which term, according to Webster's Dictionary, means, among other things, "to come into possession."  See Pl.'s Mem. of Law in Opp'n to COS's Mot. for Summ. J., at 20, Dkt. No. 109.  Wood misconstrues the emphasis of §1692a(6)(F)(iii), which is that "an entity cannot be a debt collector unless the debt it attempts to collect is in default." Alibrandi v. Financial Outsourcing Services, Inc., 333 F.3d 82, 88 (2d Cir. 2003) (citing 15 U.S.C. § 1692a(6)(F)(iii)). It is clear that COS obtained Wood's debt before it went into default, since it is undisputed that COS had been servicing the Account since it was opened. Moreover, as COS points out, courts have interpreted § 1692a(6)(F)(iii) to apply "not only to those who have purchased a debt prior to default, but also to those who had responsibility prior to default for collecting the debt owed to another."

15

See, e.g., Franceschi v. Mautner-Glick Corp., 22 F. Supp. 2d 250, 254 (S.D.N.Y. 1998).

Also, Wood's argument that COS does not have the benefit of the exception in 1692a(6)(F)(iii) because that section applies only to mortgage service companies fails as a matter of law.  Wood cites the legislative history of the FDCPA in support of his argument.  To be sure, the Congressional Report on the Act explained that the definition of a debt collector does not include "mortgage service companies ***and others*** who service outstanding debts for others, so long as the debts were not in default when taken for servicing." S.Rep. No. 95–382 (1977), reprinted in 1977 U.S.C.C.A.N. 1695, 1698 (emphasis added).  COS falls within this exception.  Moreover, in accordance with the legislative intent of the FDCPA, courts apply the exception to other types of companies besides mortgage service companies.  See Bolik v. DFS Services LLC, No. 10-cv-5211, 2011 WL 4359987, at *2 (E.D. Pa. Sept. 16, 2011) (credit card servicer not a debt collector under § 1692a(6)(F)(iii)); Martin v. Sallie Mae, Inc., No. 5:07-cv-00123, 2007 WL 4305607, at *10(S.D. W.Va. Dec. 7, 2007) (citing e.g., Johnson v. Sallie Mae Servicing Corp., 102 F. App'x 484 (7th Cir. 2004); Gibbs v. SLM Corp., 336 F. Supp. 2d. 1, 10-14 (D. Mass 2004); Seals v. Nat'l Student Loan Program, No. CA-02-101-5, 2004 WL 3314948, at *5 (N.D. W.Va. Aug. 16, 2004) (finding student loan servicer not a debt collector under § 1692a(6)(F)(iii)); Pulawa v. Federal Recovery Services, Inc., Nos. 05-cv-0159, 05-cv-0209, WL 1153745, at *7 (D. Haw. May 01, 2006) (finding that, pursuant to the plain language of § 1692a(6)(F)(iii), the defendant is not a debt collector because it obtained plaintiff's fitness club membership debt before it was in default).

Because COS falls within the § 1692a(6)(F)(iii) exception to the FDCPA's definition of a debt collector, all of Wood's FDCPA claims against COS

necessarily fail, and the court need not address whether the affiliate exception in § 1692(a)(6)(B) also applies.  Accordingly, COS's motion for summary judgment against Wood on his FDCPA claims against it is granted.

### 2.  *FDCPA Claims Against NCO*

In support of its motion for summary judgment on Wood's FDCPA claims against it, NCO argues that because the Notice is not a communication from NCO, it is not liable to Wood on his FDCPA claims and that, notwithstanding, the Notice is not deceptive.  In opposition, and in support of his motion for summary judgment against NCO, Wood counters that NCO "used" the Notice as a means to collect a debt and that the Notice is deceptive.

Because the issue of whether NCO's involvement in the creation or approval of the Notice constitutes "use" under the FDCPA need only be decided if the Notice is deceptive under the Act, the court will address the latter issue first. Wood argues the Notice is deceptive for two reasons: (1) it fails to disclose NCO's involvement such that any consumer calling the toll-free number would expect to speak with COS, not NCO; and (2) it falsely implies that a decision to sue is imminent.

The second of Wood's bases for arguing that the Notice is deceptive presents a question that has been specifically dealt with by another district court in this circuit.  In Sorel v. Capital One Services, LLC, No. 11-CV-703, 2012 WL 3596487 (D. Conn. Aug. 20, 2012), the court granted summary judgment to a third-party debt collector, defendant, MRS Associates, Inc. ("MRS"), and denied summary judgment to the plaintiff consumer on the issue of whether language included in a challenged communication falsely threatened legal action.  Sorel involved a challenge to a "Pre-Legal Notice," which is similar to the one at issue here, as well as a letter the plaintiff received from the defendant, MRS, a third

party debt collector, as is NCO here.  Although the plaintiff initially also sought relief against Capital One Bank and COS, he eventually withdrew all of his claims except for his FDCPA claims against MRS arising from the MRS letter.

The MRS letter that the court reviewed in <u>Sorel</u> included the following language:

> At this point in time, your account has been pre-qualified by Capital One as lawsuit eligible.  If we do not hear from you regarding this important business matter, your account may be subject to litigation.  If this were to occur, your account may incur additional fees and penalties if allowed under the state law of your jurisdiction.

<u>Sorel</u>, 2012 WL 3596487, at *2.  The court went on to hold that this language did not falsely characterize the plaintiff's account as lawsuit eligible in violation of the FDCPA because the evidence showed "that COS had, in fact, probed [the plaintiff's] account and designated his account for the pre-legal program – a program in which all accounts were subject to potential litigation upon default." <u>Sorel</u>, 2012 WL 3596487, at *5.  Further, after extensive legal analysis, the court also concluded that the letter did not falsely threaten litigation in violation of the FDCPA because it "does not suggest, even to the unsophisticated, that 'legal action . . . is *about to be initiated* and can be averted from running its course only by payment.'" <u>Id.</u>, at *6-9 (quoting <u>Pipiles v. Credit Bureau of Lockport</u>, 886 F.2d 22, 25 (2d Cir. 1989) (emphasis in original)).  The plaintiff in <u>Sorel</u>, like Wood here, argued that because COS typically did not place an account with an attorney until six months after the account was referred to a third party debt collector, the language falsely threatens imminent litigation when none was intended.  <u>See</u> <u>Sorel</u>, 2012 WL 3596487, at *6.  The court concluded, however, that "even to the least sophisticated consumer, the MRS letter warned that legal action was merely

18

*possible*, not imminently forthcoming." Id. (emphasis in original).

      The court adopts the analysis in Sorel and concludes, as the court did there, that the language at issue here, when viewed from the perspective of the least sophisticated consumer, does not threaten that legal action is about to be initiated. Instead, the Notice informs Wood that his Account "meets the guidelines for legal action if payment is not made[,]" but that "[n]o decision has been made to sue you yet, so you still have options." Ex. 1 to Powell Decl., Dkt. No. 105-2.  As with the letter in Sorel, "even to the least sophisticated consumer, [the Notice here] warned that legal action was merely *possible*, not imminently forthcoming." Sorel, 2012 WL 3596487, at *6.  Therefore, the Notice did not falsely threaten litigation in violation of the FDCPA, and summary judgment will be granted to NCO and denied to Wood, accordingly, as to this issue.

      The other of Wood's bases for arguing that the Notice is deceptive – that it fails to disclose NCO's involvement such that any consumer calling the toll-free number would expect to speak with COS, not NCO – presents a more difficult question.  Courts dealing with this issue, including the Court of Appeals for the Second Circuit, have found no deception associated with routing calls from a creditor's toll free number to a third-party debt collector as long as the consumer is made aware of the possible involvement of a third-party debt collector, even if the third-party debt collector is not mentioned by name.

      In Rogers v. Capital One Services, LLC, 447 F. App'x 246 (2d Cir. 2011), the Court of Appeals affirmed the lower court's dismissal of the plaintiff-consumer's FDCPA claims against the defendant, third-party debt collector, United Recovery Systems, LP ("URS").  There, the plaintiff received a letter signed by COS, advising him that the annual percentage rate on his credit card account will be reduced to 0% if he calls a toll-free number to make arrangements

for an acceptable repayment plan.  While the letter does not specifically state that the plaintiff's account is delinquent, it contains language suggesting as much, and invites the plaintiff to call a toll free number "to make payment arrangements and start to resolve your debt."  Rogers v. Capital One Services, LLC, No. 10-CV-398, 2011 WL 873312, at *1 (D. Conn. 2011).  In Rogers, as here, calls to the toll-free number are redirected to a third party debt collector, there, URS.  However, unlike here, the letter in Rogers includes a paragraph notifying the plaintiff that if his account is being served by "one of our external agencies, they will be able to assist you and will notify us when you have made acceptable arrangements with them."  Id.  While the letter in Rogers informed the plaintiff that his account might be handled by an external agency, it did not specifically identify URS.

As is relevant here, the court in Rogers affirmed the dismissal of the plaintiff's claims against URS under sections 807(10), 807(14) and 808 of the FDCPA, see 15 U.S.C. §§ 1692e(10), 1692e(14), and 1692f, because there, unlike here, reference is made to the existence of URS, even if not by name.  There, unlike here, the letter "identifies Capital One Services as the debt collector who will service [the plaintiff's] debt either directly or through 'one of our external agencies.'"  Id.  The court held that the plaintiff failed to allege deception under the FDCPA by the mere fact that URS was "not identified by name as the particular external agency that Capital One Services will use for servicing [the plaintiff's] debt."  Id., at 249.

In addition, the court in Munekiyo v. Capital One Bank, N.A., No. 11-CV-3143, 2011 WL 6057830 (C.D. Cal. Dec. 5, 2011) granted a motion to dismiss claims against Capital One Bank and Capital One Services under the FDCPA and its California state law equivalent, regarding a letter very similar to that upon which the claims in Rogers were based.  When deciding whether the

20

plaintiff there stated a FDCPA claim that the letter was misleading because it directs callers to a toll free number that connects them to NCO instead of Capital One, the court disagreed with plaintiff, finding, as in Rogers, that because the letter discloses that an external agency may be servicing the plaintiff's account, it was not misleading or deceptive. See Munekiyo, 2011 WL 6057830, at *6. In fact, the court in Munekiyo specifically distinguished this court's decision denying COS's motion to dismiss the complaint, because here, the letter at issue "'omitt[ed] mention of any third party involvement,' unlike the [letter there] that clearly states possible involvement of an external agency." Id., n.6 (citing Wood v. Capital One Services, LLC, 718 F. Supp. 2d 286, 292 (N.D.N.Y. 2010)).

Here, unlike in Rogers or Munekiyo, NCO's existence, or the existence of any third-party debt collector, is neither overtly nor implicitly stated in the Notice. Therefore, read in isolation, the Notice could be deemed deceptive because any consumer calling the toll-free number would expect to speak with COS, not NCO, a third-party debt collector. However, in this case, the record on summary judgment reflects that it is undisputed that after the Account was transferred to NCO, it sent an initial notice to Wood in accordance with FDCPA requirements, and Wood received the NCO Letter before he received the Notice. Accordingly, by the time Wood read the Notice, he was aware of NCO's involvement in collecting on his Account. Assuming, without deciding, that NCO's involvement with the Notice rises to the level of "use" within the meaning of the FDCPA, as is argued by Wood, the Notice, read in conjunction with the NCO Letter, do not amount to a false, misleading or deceptive communication on behalf of NCO. See Porter v. Law Office of Charles G. McCarthy Jr. & Assocs., No. 09–1370. 2011 WL 3320331, at * (C.D. Ill. Aug. 2, 2011) (construing multiple communications together to find an FDCPA violation on a motion for summary judgment);

<u>Catherman v. Credit Bureau of Greater Harrisburg</u>, 634 F. Supp. 693, 695 (E.D. Pa. 1986) (reading communications "together rather than in isolation, since both were sent in an effort to collect the same debt and were received within a two-month period" in granting summary judgment to defendant on FDCPA claims against it).  Accordingly, NCO's motion for summary judgment is granted, and Wood's cross-motion is denied, in this regard.

### *B.  GBL § 349*

Remaining for consideration on the pending summary judgment motions are Wood's claims against each defendant under GBL § 349.  In order to prevail on a claim under § 349, Wood must prove that each defendant "engaged in a materially misleading consumer-oriented act or practice that resulted in [his] injury."  <u>See Spagnola v. Chubb Corp.</u>, 574 F.3d 64, 74 (2d Cir. 2009).  For the foregoing reasons, Wood cannot establish that he was deceived or misled by the Notice, as read in conjunction with NCO's letter.  Accordingly, the motions for summary judgment by COS and NCO are granted, and Wood's cross motion against NCO is denied, regarding Wood's § 349 claim.

Based on the foregoing, the motions for summary judgment by COS and NCO are granted in their entirety and the cross-motion for summary judgment by Wood against NCO is denied in its entirety, resulting in dismissal of the entire action.  Consequently, Wood's motion for class certification is denied as moot.

### *VI. Conclusion*

Accordingly, it is ORDERED that the motion for summary judgment by defendant, NCO Financial Systems, Inc. against plaintiff, Gareth D. Wood, <u>see</u> Dkt. No. 104, is GRANTED, and it is further

ORDERED that the motion for summary judgment by defendant, Capital

One Services, LLC against plaintiff, Gareth D. Wood, see Dkt. No. 105, is GRANTED, and it is further

ORDERED that the cross-motion for summary judgment by plaintiff, Gareth D. Wood against defendant, NCO Financial Systems, Inc., see Dkt. No. 107, is DENIED, and it is further

ORDERED that the motion by plaintiff, Gareth D. Wood to certify a class, see Dkt. No. 57, is DENIED as moot.

The Clerk of the Court is directed to close this case and issue judgment accordingly.

IT IS SO ORDERED.

DATED:      September 20, 2012
            Syracuse, New York

_____
Neal P. McCurn
Senior  U.S. District Judge